MERRITT COMBS, RESPONDENT, v. STANDARD OIL COMPANY ET AL., APPELLANTS.*

Kansas City Court of Appeals.   June 6, 1927.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2708, p. 764, n. 77; Explosives, 25CJ, section 10, p. 186, n. 56; section 32, p. 201, n. 45; section 46, p. 209, n. 7; p. 210, n. 9.

*William T. Meikle, Kitt & Marshall* and *Miles Elliott* for respondent.

*R. R. Brewster, James W. Davis* and *Arch B. Davis* for appellant.

WILLIAMS, C.—This is a suit for personal injury instituted in the circuit court of Daviess county, Missouri, taken on a change of venue to Livingston county, Missouri, where the case was tried.

The trial resulted in a verdict for plaintiff for $1000. After an unsuccessful motion for a new trial, and in arrest of judgment, defendant brings the case here by appeal.

No question is made as to the pleadings.

The evidence shows that defendant's place of business, which was a filling station was in a frame building, fronted East on Main street in the town of Polo, Missouri, Main street running North and South. There were business houses immediately across the street East of this building, but no other business houses were located in the block where the filling station was located. The main business section of the town was in the block immediately North. The filling station occupied the South half of the frame building. A harness shop occupied the North half of this same frame building. The space occupied by these businesses was separated by a board wall. The part occupied by defendant was divided into two rooms of about equal size. In the front room of the part occupied by defendant was the office of the defendant, Standard Oil Company, and in the rear room was stored a barrel of Neolite. The rear door of the part occupied by defendant was a sliding or rolling door. Inside the rolling door was a smaller door on hinges. This barrel of Neolite contained about thirty or thirty-two gallons and was sitting in the building close to the rear door. The barrel containing this Neolite was of very heavy metal and was airtight. The city fire engine was located in the rear of the filling station. One Isely seems to have been the proprietor of the harness shop which occupied the North half of the building. On March 25, 1925, Isely went to his harness shop and about 7:30 in the morning started a fire in the stove. He then went to the Post Office and on his way back saw smoke coming out around the flue. He soon discovered the building was on fire. The defendant, Frank Buchanan, on the day of the fire was not in Polo. His daughter, Mrs. Robinson, had charge of the business. When the fire was discovered, Isely and another resident of Polo assisted Mrs. Roberts to carry out the office fixtures belonging to defendants. The evidence shows that Mrs. Robinson did not mention the barrel of Neolite. When one Shafer attempted to open the rear sliding door of the filling station so as to get the fire engine out of the building, the door seemed to stick. He went inside through a window and felt along the bottom of the door but could not discover what was holding it. There was no blaze in the back room at that time but there was smoke. An ax was procured, the cleat was chopped off the large or rolling door and the fire engine was taken out. After Shafer had walked across the street Northwardly, the can of Neolite which was in the building of defendant exploded.

The plaintiff was passing in front of the Polo Trust Company building when the explosion occurred, a distance of about 160 feet from the place where the can of Neolite had been placed. The explosion broke the windows in the Polo Trust Company. A piece of glass out of the broken front window of the Polo Trust Company hit the plaintiff on the leg and entirely severed the Achilles tendon. Plaintiff testified that he was a barber; that when the fire broke out he went to see if he could help save anything or if there was anything he could do. When he arrived on the scene, he saw the people were leaving and started back to his shop. On the way he was hit by the glass as above stated.

G. I. Isely testified: "It was about, I should judge, twenty or twenty-five minutes after the fire started when the barrel busted."

There is no question as to the explosion, and the witness testified that the smoke and flames went into the air thirty or forty feet. The iron head of the barrel was blown something like 200 yards. The testimony showed that Neolite was a higher grade product than kerosene and was used for incubators as it did not carbonize the wick as does kerosene.

When comparing the power of steam and gasolene, defendant's expert witness testified that expansion caused the power in steam and the power from gasolene and coaloil is caused by explosion. He further testified that when you get sufficient power to cause an explosion of a metal container made out of such powerful metal as that "indicating the container in which the Neolite was kept," you have a considerable explosion, causing a denotation wave, commonly referred to as a concussion. Either coaloil or Neolite when used in a tractor will produce sufficient explosive force to operate the tractor.

The main instruction required a jury to find that Neolite was likely to explode if heat were communicated thereto, and the defendant could, with the exercise of ordinary care, have known this. Further the jury was required to find that the defendant, its servants or employees, knew or that by the exercise of ordinary care, could have known that fire was likely to be communicated to the Neolite in time, so that by the exercise of ordinary care the Neolite could have been removed from the building, and that the failure to remove the Neolite was negligent, and by such failure the Neolite was caused or permitted to explode, and that by reason of the explosion the glass was broken and plaintiff injured.

Further, the instruction submitted the question as to warning persons in the locality of the burning building. No question as to the instructions, and defendant rests his case only upon the contention that plaintiff wholly failed to prove any actionable negligence.

As was lately said in the case of Watson v. Carthage Marble & White Lime Co., 290 S. W. 649, l. c. 650: "In considering the demur-

rer to the testimony of plaintiff, we must disregard the evidence offered by defendant, unless it strengthens the evidence of plaintiff.''

It is urged by appellant that plaintiff must show such a connection between the negligent act and the injury as to bring it within the reasonable contemplation of the defendants, and that such injury would naturally and probably result from such act, and that in the case at bar plaintiff did not carry that burden.

In answer to that contention it appears that defendants must have known the explosive character of Neolite. We do not understand that it is necessary for the very injury complained of to have been foreseen, but as stated by the Supreme Court in the case of H. W. Benton et ux. v. City of St. Louis, 248 Mo. 98, l. c. 110: ''The party charged may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.''

In support of that proposition Judge Lamb cites with approval the following cases: Dean v. Railroad, 199 Mo. 411; Zeis v. Brewing Assn., 205 Mo. 651; Brady v. Railroad, 206 Mo. 537; Buckner v. Horse & Mule Co., 221 Mo. 710; Woodson v. Railroad, 224 Mo. 707.

We think that the injury to plaintiff was a natural and probable consequence of the explosion.

Again it is insisted that the uncontradicted evidence of the expert shows that Neolite is no more explosive and no more powerful than water. However, the expert testified that the power from water came from expansion of the steam and the power from gasolene or Neolite was from an explosion. In view of the rule announced in Watson v. Carthage Marble & White Lime Co., supra, we think this sufficient to take the case to the jury on the explosive properties of Neolite.

It is suggested that plaintiff cannot recover by reason of the fact that he was impelled by curiosity only in visiting the fire, and cites in support of that contention the case of Cleveland, C., C. & St. L. Ry. Co. v. Ballentine, 84 Fed. 935. On a similar point that case was cited and this court in Buchholz et al. v. Standard Oil Co. of Indiana, 244 S. W. 973, l. c. 977, said: ''The case of Cleveland, C., C. & St. L. Ry. Co. v. Ballentine, 84 Fed. 935, 28 C. C. A. 572, and like cases cited by defendant, are not in point. There the injured person, without any invitation and without legal right, went upon the property of a railroad company after the fire had started. It is apparent that we cannot say as a matter of law that the going of deceased from the Miller home to the scene of the conflagration was the proximate cause of her death.''

Again, under the rule of Watson v. Carthage Marble & White Lime Co., supra, we are concluded by the testimony of plaintiff that he was going to the fire to see if he could be of any use. We therefore think this point is not well taken.

184

The record contains evidence which justified the jury in finding that the defendant knew of the explosive character of Neolite, knew that the building was on fire and knew that Neolite was likely to explode. The most serious question is as to whether or not there was sufficient time and opportunity to have removed the Neolite from the burning building.

The case of Wilson v. C. & S. Ry. Co. (Colo.), 142 Pac. 174, was affirmed on the theory that enough time elapsed to have given opportunity to remove the explosive or to have warned people who were endeavoring to extinguish the fire.

In Henry v. C., C., C. & St. L. Ry. Co., 67 Fed. 426, the case turned upon a question of time and plaintiff was allowed to recover. In the cases cited the time was much longer than in the case at bar and the opportunity to move the dangerous explosive was better.

However, in the case at bar the evidence showed that twenty to twenty-five minutes elapsed after the fire started before the explosion. There was time to remove the typewriter and other office equipment. We have concluded therefore, that this issue was properly for the jury, and we cannot say as a matter of law the time was not sufficient. Judgment affirmed. *Frank, C.,* concurs.

PER CURIAM:—The foregoing opinion by WILLIAMS, C., is adopted as the opinion of the court. *Bland* and *Arnold, JJ,* concur; *Trimble, P. J.,* absent.

