WILLIMANTIC INVESTORS, INC. *v.* MILDRED F. COVELL ET AL.

KING, MURPHY, MELLITZ, SHEA and ALCORN, Js.

Argued October 13—decided December 2, 1959

*Theodore E. Steiber,* with whom, on the brief, was *Richard I. Steiber,* for the appellant (plaintiff).

*John F. McGowan,* for the appellees (defendants).

MURPHY, J. The plaintiff contracted to purchase a business property in the center of Bridgeport from the defendants. It paid a deposit which the defendants have retained as liquidated damages for claimed breach of the contract. The plaintiff sued to recover the amount of the deposit and of the expenditures it had made in ascertaining the market-

ability of the title to the property. The jury returned a verdict for the defendants. The plaintiff has appealed from the judgment. It assigns as error the refusal by the trial court to include one paragraph of the draft finding in the finding; the admission of certain evidence; the refusal to charge as requested; and portions of the charge as given.

On August 24, 1953, the parties entered into a written agreement wherein the plaintiff agreed to purchase and the defendants agreed to sell certain real estate consisting of land and a building in downtown Bridgeport. The contract provided for the completion of the sale on November 16, 1953. The plaintiff paid a deposit of $5000 which was to be returned, together with reasonable costs of title search, if the defendants could not convey good title. The deposit was to be forfeited by the plaintiff and retained by the defendants as liquidated damages if the plaintiff failed to purchase the property and there was no uncorrected defect in the defendants' title. The contract further provided that notice of any defect should be given to the defendants not later than fifteen days prior to the date of the closing and that the defendants would have ninety days after receipt of notice to remedy the defect. The other provisions of the contract are not material to our discussion of the case.

Early in September, 1953, the plaintiff notified the defendants that a preliminary search of the title disclosed that the named defendant, Mrs. Covell, had been left a life use of the property by her father, with remainder to go to the heirs of her body, and that the possibility that she might yet have children born to her who would acquire an interest in the property rendered the title unmarketable. The plaintiff, because of this possibility, on

October 9, 1953, wrote the defendants that it elected to rescind the contract. The defendants then applied to the Superior Court for the appointment of a guardian ad litem for the unborn children and for an order authorizing the sale of the property by the defendants and the guardian ad litem. The guardian ad litem was appointed on November 10, 1953, and on November 13, 1953, judgment decreeing the sale was rendered. The plaintiff had been notified on November 12, 1953, of the pending application and that the defendants were extending until November 20, 1953, the time for the closing.

Thereafter, further discussions were had by the parties. The plaintiff caused the search of the title to be completed. On December 1, 1953, it notified the defendants that the title was not marketable because the chimney on the property extended four inches into the north wall of the adjoining bank building, as disclosed by a document recorded in the land records in 1884 wherein a predecessor in title of the defendants had expressly acknowledged for himself and his successors in title that the encroachment of the chimney was by permission of the bank, that no easement therein was acquired and that the encroachment would be removed whenever the bank or its successors in title so required. About the same time, the plaintiff requested permission for its representative to examine the encroachment, but the defendants refused the request. Inconclusive discussions continued between the parties until February 17, 1954, when the defendants wrote to the plaintiff that they had obtained an estimate from a contractor that the cost of relocating the chimney was $2500 and that they were ready, willing and able to have the work done. In the alternative, they stated that if the plaintiff preferred to accept the premises

in their then condition upon the assumption that the bank would not require removal of the encroachment, the defendants would make an allowance of $2000 upon the purchase price. The plaintiff was given one week in which to act. On February 27, 1954, the defendants wrote to the plaintiff that they considered the contract breached by the plaintiff. On February 26, 1954, the defendants accepted a deposit of $5000 from another prospective purchaser, conditioned upon the availability of the property on March 1, 1954. It was sold to that purchaser on March 1 for the price at which the plaintiff had agreed to buy except for an allowance of $2500 because of the chimney encroachment. Mrs. Covell was fifty-nine years of age when the contract was executed in 1953 and sixty-four years old when the case was tried in 1958. An architect examined the encroachment for the plaintiff on February 6, 1958, the day before he testified at the trial, and he estimated the 1954 cost of removing the encroachment at a figure more than double that of the estimate made by the contractor for the defendants. The defendants did not contest the fact that the chimney condition, unless corrected, made the title unmarketable.

The plaintiff is not entitled to any correction of the finding. The September, 1953, opinion of the defendants' attorney discounting the defect in the title due to the possibility of Mrs. Covell's yet having children was of no greater materiality than the evidence of her age, to which the plaintiff had objected. Such defect in title as may have existed because of her age and the possibility of further procreation was removed when the defendants, within the time provided in the agreement, obtained a judgment of the Superior Court authorizing the sale of

the property and the protection of the interests of any children who might thereafter be born. General Statutes, § 52-500. The court did not commit reversible error when it charged that the attempted rescission of the contract by the plaintiff on October 9, 1953, was therefore ineffectual, although its further instruction that considering Mrs. Covell's age it was not only unlikely but improbable that she would bear children and that therefore the plaintiff's apprehension was without any substantial foundation as a practical matter was not supported by the finding and was not in accord with our law. The presumption that the possibility of issue is never extinct so long as a person lives is settled law in this country as it pertains to the validity of titles and the distribution of property. *White* v. *Allen*, 76 Conn. 185, 189, 56 A. 519; *Day* v. *Webler*, 93 Conn. 308, 312, 105 A. 618, and cases annotated at 67 A.L.R. 538, 549, and 146 A.L.R. 794, 802.

The court instructed the jury that the determination whether the plaintiff had sustained its burden of proving "that the defendants would not sufficiently and reasonably remove the encumbrance regarding the chimney and thus left in abeyance the marketability of title" should be governed by the acceptance of the testimony, as to the cost of relocating the chimney, of either the architect who testified for the plaintiff or the contractor who testified for the defendants. The evidence of these two witnesses, if material to the determination of this issue, was but an element for the jury's consideration in connection with all the other evidence in the case. The jury should not have been so charged. *Coy* v. *Milford*, 126 Conn. 484, 489, 12 A.2d 641; *Brodie* v. *Connecticut Co.*, 87 Conn. 363, 367, 87 A. 798.

The ultimate issue for the jury to determine was

whether upon all the evidence the plaintiff had proved that the defendants were unable to convey a marketable title to the property within a reasonable time after being notified of the chimney encroachment. If so, the plaintiff was entitled to recover its deposit and the costs of searching the title. Also, the jury should have been instructed that the refusal by the defendants to permit the plaintiff's representative to examine the chimney and ascertain the extent of the encroachment disclosed by the land records was one element for their consideration in measuring the good faith and willingness of the defendants to carry out the contract, and in addition the jury should have received adequate instructions from which they could decide whether the plaintiff's request was reasonable or not under all of the facts in the case.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.